UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. WILLIAM WOOD, CAROLYN ROSEN-WOOD, and GREEN LINE ADVISORY GROUP FOR MEDFORD,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF TRANSPORTATION, RICHARD DAVEY, in his capacity as Secretary, Massachusetts Department of Transportation, FEDERAL TRANSIT ADMINISTRATION, REGION I, and MARY BETH MELLO, in her capacity as Regional Administrator of the Federal Transit Administration, Region I,<br><br>Defendants. | Civil Action No.<br>13-cv-10115 |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is a lawsuit seeking to block the planned extension of the Massachusetts Bay Transportation Authority Green Line light rail route to Somerville and Medford. Plaintiffs Dr. William Wood, Carolyn Rosen-Wood, and Green Line Advisory Group for Medford, all proceeding *pro se*, oppose the extension of the Green Line on purported environmental and other grounds.

Specifically, plaintiffs challenge a determination by the defendant Federal Transit Administration ("FTA") under the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347, ("NEPA"). (*See* Compl. ¶¶ 1, 24-26). The FTA decision that plaintiffs challenge is a July 9,

2012 Finding of No Significant Impact ("FONSI"), which allowed the Green Line Extension project to proceed based on a prior Environmental Assessment ("EA") without the need for preparation of a more detailed environmental impact statement. (*See id.* at ¶¶ 1, 11, 14, 36-37).

Defendants Massachusetts Department of Transportation ("MassDOT") and its Secretary, Richard Davey, have moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

I.   **Factual Background**

   A.   **Plaintiffs**

Dr. William Wood and Carolyn Rosen-Wood are individuals who reside at 25 Bussell Road in Medford, Massachusetts. (*Id.* at ¶¶ 24-25). Both Wood and Rosen-Wood identify themselves as disabled; however, they do not indicate the nature of the disabilities. (*Id.* at ¶ 7). Plaintiffs' home is approximately 1.86 miles from the proposed terminus of the Green Line extension at College Avenue. (Mot. to Dis. Ex. C at 3).

According to the complaint, the Green Line Advisory Group for Medford ("GLAM") is a "grass-roots group" formed in response to the proposed extension project. (Compl. ¶ 26). It appears to be an unincorporated association. The complaint alleges that GLAM's membership consists of "members of the disability and environmental justice community" in Medford, as well as small business owners, "abutters," and other citizens. (*Id.*). Its alleged goals include educating the public about the Green Line extension and its impact. (*Id.*).

According to Wood, he serves as a "disability representative" on a Citizens Advisory Committee associated with the project. Both individual plaintiffs are also parties to a complaint

lodged with the FTA Civil Rights Office against MassDOT.  (Pl. Br. at 4; Compl. ¶¶ 6–7).  GLAM is a party to the same complaint, which alleges discrimination on the basis of disability by MassDOT.  (Compl. ¶¶ 6–7; Pl. Br. Ex. 1 at 1 ).

    **B.**    **Defendants**

MassDOT is an executive department of the Commonwealth of Massachusetts.  It is generally responsible for highways, public transit, and other forms of transportation within the Commonwealth of Massachusetts.  Richard Davey is the Secretary of MassDOT.

Mary Beth Mello is the regional administrator of the Federal Transit Administration for Region 1.  The FTA is the agency charged with enforcing the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347, a law with which Green Line the extension project must comply.  FTA Region 1 covers six states, including Massachusetts.

    **C.**    **The Proposed Extension of the Green Line**

In 2010, MassDOT announced a planned extension of the Green Line light rail transit line into parts of Somerville and Medford, Massachusetts.  (Mot. to Dis. Ex. A at 1).  MassDOT plans to extend the Green Line to College Avenue in Medford with a short branch to Union Square in Somerville.  Both extensions will be placed within existing commuter-rail rights of way.  (*Id.*).  Both will operate from a relocated Lechmere Station in Cambridge.  (*Id.* at 2).  The project would require modifications to the commuter rail lines.  (Compl. ¶ 2).

In May and June 2010, MassDOT held a series of public meetings to obtain input on the project.  (Mot. to Dis. Ex. A at 3).  Those meetings were advertised both publicly, through targeted mailings to individuals whose property abutted the proposed extension, and through mailings to those who had attended meetings, requested information, or had otherwise shown

interest in the project.  (*Id.*)

On October 3, 2011, MassDOT and the Massachusetts Bay Transportation Authority issued an Environmental Assessment of the impact of a planned extension to this transit line. (*Id.*).  A public hearing to discuss the assessment followed on October 20.  MassDOT received and responded to approximately 450 comments.  (*Id.*).  MassDOT also received and responded to comments from various public agencies.  (*Id.*).

### D.      The Issuance of a FONSI

On July 9, 2012, the FTA issued a Finding of No Significant Impact ("FONSI") to MassDOT for the project.  (Mot. to Dis. Ex. A at 5).  The FONSI stated that the air-quality study undertaken for the project demonstrated compliance with relevant air-quality provisions.  (*Id.* at 4).  In addition, it found that the EA sufficiently demonstrated that the project would not make any significant adverse environmental impact, and that sufficient evidence supported the finding that an Environmental Impact Statement was not required.  (*Id.*).

### E.      Plaintiffs' Claims

Wood, Rosen-Wood, and GLAM all object to the extension project.  The complaint alleges that the project involves relocation of existing commuter rail tracks that "would bring diesel locomotives that run in the Right of Way (ROW) closer in proximity to residential abutter homes and small businesses in the affected areas" and "exhaust from diesel locomotive operation, known to contain carcinogens, in closer proximity to the identified human environment of the environmental justice and disability populations living within the city of Medford." (Compl. ¶¶ 6 - 8).  It further alleges that the project will "expose the city of Medford and its residents and businesses to greater diesel emission exposure from additional bus, truck

and other diesel vehicles attracted to designated transit stations and increased commercial and residential land development proposed and planned." (*Id.* at ¶ 10). Plaintiffs cite (1) alleged "[a]dverse social equity impact to environmental justice and disability populations in the area if all future funds are concentrated on building the [Project] with no funds [available in] years to come to correct issues of inequality of transit service in minority populations . . . "; (2) "[a]dverse impacts to the road system in Medford such as increased wear and tear to roads and bridges and other infrastructure, and the increased cost to local taxpayers in the future"; "[a]dverse impact to wildlife along the Medford corridor from lights and noise associated with a light rail transportation project"; and (4) "[a]dverse impact to the Mystic River Watershed, other waterways and ecological habitat due to lack of proper attention to storm water management, construction of the transit project and associated land development use, [and] increased salting and other maintenance activities pertaining to light rail transportation projects." (*Id.* at ¶ 58). Finally, the complaint alleges that the NEPA process resulting in the FONSI improperly excluded, and was otherwise inconsistent with the rights of, individuals in affected Medford "environmental justice and disability communities." (*See, e.g.*, *id.* at ¶¶ 13, 20). In particular, plaintiffs seek to protect the rights of persons "living within the historic neighborhood of environmental justice and disability communities within the West Medford community." (*Id.* at ¶ 20).

The complaint also makes various claims with regard to a possible further extension of the Green Line to the Mystic Valley Parkway. (Compl. ¶ 64). The FONSI does not, however, address that possible extension.

## II.     Procedural Background

On January 18, 2013, GLAM, William Wood, and Carolyn Rosen-Wood filed a complaint in this Court. The complaint seeks (1) a declaratory judgment that defendants violated NEPA through the extension project, EA, and FONSI; (2) a withdrawal of the FONSI and EA until the FTA demonstrates to the Court that it has complied with the law; (3) an order enjoining defendants from proceeding with the extension project until it has corrected the violations of federal law alleged in the complaint; (4) the removal of FTA, Region 1 as overseer of NEPA; (5) an award of costs; and (6) any other relief the Court deems just and equitable.

Defendants MassDOT and Richard Davey have moved for summary judgment in their favor. Defendants contend that the plaintiffs do not have standing to pursue their claims, or, in the alternative, that the complaint fails to state a claim against the defendants upon which relief can be granted.

## III.    Analysis

### A.     The Claims by Plaintiff GLAM Must Be Dismissed as an Organization Cannot Proceed *Pro Se*

As noted, according to the complaint, GLAM is a "grass-roots group." (Compl. ¶ 26). It appears to be an unincorporated association. It is not represented by counsel.

It is well-settled that corporations, partnerships, associations, and other artificial entities can only appear in federal court through licensed counsel. *See,.e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 202-03 (1993). Accordingly, GLAM will be dismissed as a plaintiff unless counsel enters an appearance for the organization within 14 days of the date of this order.

B.   **Plaintiffs Wood and Rosen-Wood Are Without Standing to Assert Claims in this Action**

In order to establish standing to bring this claim, plaintiffs must assert and demonstrate a particularized injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 including n.1 (1992) (standing requires "concrete and particularized" injury and "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way"). It is not enough simply to be unhappy with a governmental decision; a plaintiff must allege an individualized harm.

Plaintiffs here allege no injury resulting from issuance of the FONSI that is specific to them. They reside nearly two miles beyond the terminus of the project. They are in no different position, as a practical matter, than tens of thousands of other residents of the northwestern suburbs of Boston (or, for that matter, millions of other residents who reside in the Boston metropolitan area and might have occasion to use the Green Line). Any injury suffered as a result of that position is not "concrete or particularized" sufficient to confer standing to litigate this action. Furthermore, to the extent that they complain about the process prior to issuance of the FONSI, such an injury is likewise insufficient to establish injury for purposes of the standing requirement. *See Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) (holding that a deprivation of a procedural right "without some concrete interest that is affected by the deprivation" is insufficient to create standing).

Because plaintiffs do not have a legally cognizable particularized injury, they do not have standing to prosecute this lawsuit. Accordingly, the claims as to the state defendants will be dismissed.

The federal defendants, the FTA and Mary Beth Mello, have not moved to dismiss. Nonetheless, if plaintiffs do not have standing to assert a claim against the state defendants, it is

difficult to see how they would have standing as to the federal defendants. Accordingly, this matter will be dismissed as to all defendants for lack of standing unless plaintiffs show cause within 21 days of the date of this order why such standing exists.

### C. The Complaint Fails to State a Claim Against the State Defendants

The NEPA does not create a private right of action. *Scarborough Citizens Protecting Resources v. U.S. Fish and Wildlife Service*, 674 F.3d 97, 102 (2012). "[F]ederal agency action covered by NEPA is [instead] reviewable under the [Administrative Procedures Act]." *Id.* The APA authorizes judicial review of "final [federal] agency action," at the behest of a person adversely affected or aggrieved thereby. 5 U.S.C. §§ 701(b)(1), 702, 704. The court, upon its review, may "hold unlawful and set aside agency action, findings, and conclusions" based on specified standards for review. 5 U.S.C. § 706.

The APA does not apply to state agency action. Furthermore, the FONSI—the agency action challenged in this case—was not issued by the state defendants. And the maximum relief that could be afforded pursuant to 5 U.S.C. § 706, were plaintiffs to prevail in this action, would consist of a declaration that the FONSI is unlawful and an order, directed to the FTA, to set the FONSI aside. As a result, even assuming that plaintiffs have standing to pursue this action, the action lies exclusively against the FTA.

### IV. Conclusion

For the foregoing reasons, (1) the motion to dismiss by defendants Massachusetts Department of Transportation and Richard Davey is GRANTED, and all claims against those defendants are DISMISSED; (2) all claims by plaintiff Green Line Advisory Group for Medford will be dismissed within 14 days of the date of this order unless counsel for that organization has

entered an appearance on its behalf prior to that time; and (3) this matter shall be dismissed in its entirety for lack of standing unless plaintiffs show cause in writing, within 21 days of the date of this order, why such dismissal is appropriate.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated:  August 2, 2013 | United States District Judge |